## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:10-cv-00265** |
| **FRONTIER COMMUNICATIONS CORPORATION,** *et al.*, | |
| **Defendant,** | |
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:10-cv-00272** |
| **YELLOWPAGES.COM, LLC,** *et al.*, | |
| **Defendants,** | |
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:10-cv-00569** |
| **GEORGIO ARMANI S.P.A.;** *et al.*, | |
| **Defendants,** | |
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:10-cv-00570** |
| **AROMATIQUE, INC.;** *et al.*, | |
| **Defendants.** | |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**GUCCI AMERICA, INC.;** *et al.,*<br><br>    **Defendants,** | **2:10-cv-00571** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**STARBUCKS CORP.;** *et al.,*<br><br>    **Defendants.** | **2:10-cv-00572** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**RENT-A-CENTER, INC.;** *et al.,*<br><br>    **Defendants.** | **2:10-cv-00573** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**THE WESTERN UNION COMPANY;** *et al.,*<br><br>    **Defendants.** | **2:10-cv-00574** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>     **Plaintiff.**<br><br>**v.**<br><br>**ROYAL PURPLE, INC.;** *et al.*,<br><br>     **Defendants.** | **2:10-cv-00575** |
| **GEOTAG, INC.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**YAKIRA, L.L.C.;** *et al.*,<br><br>     **Defendants.** | **2:10-cv-00587** |
| **GEOTAG INC.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**WHERE 2 GET IT, INC.;** *et al.*,<br><br>     **Defendants.** | **2:11-cv-00175** |
| **GEOTAG INC.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**ZOOSK, INC.**<br><br>     **Defendant.** | **2:11-cv-00403** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**EYE CARE CENTERS OF AMERICA, INC.**<br><br>    **Defendant.** | **2:11-cv-00404** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**AMERCO,** *et al.*<br><br>    **Defendants.** | **2:11-cv-00421** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**7-ELEVEN, INC.,** *et al.,*<br><br>    **Defendants.** | **2:11-cv-00424** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**SUNBELT RENTALS, INC.**<br><br>    **Defendant.** | **2:11-cv-00425** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**CLASSIFIED VENTURES, LLC.**<br><br>        **Defendant.** | **2:11-cv-00426** |
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**CANON INC. and,**<br>**CANON U.S.A., INC.,**<br><br>        **Defendants,** | **2:12-cv-00043** |
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**AMERICAN APPAREL INC.,**<br><br>        **Defendant,** | **2:12-cv-00436** |
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**ABERCROMBIE & FITCH CO.,**<br><br>        **Defendant,** | **2:12-cv-00437** |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:12-cv-00438** |
| **AMERICAN EAGLE OUTFITTERS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:12-cv-00439** |
| **ANN INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:12-cv-00441** |
| **BURLEIGH POINT LTD.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:12-cv-00442** |
| **CATALOGUE VENTURES, INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**BURBERRY LIMITED,**<br><br>     **Defendant,** | **2:12-cv-00443** |
| **GEOTAG INC.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**BURLINGTON FACTORY WAREHOUSE**<br>**CORPORATION,**<br><br>     **Defendant,** | **2:12-cv-00444** |
| **GEOTAG INC.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**CACHE INC.,**<br><br>     **Defendant,** | **2:12-cv-00445** |
| **GEOTAG INC.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**THE WILLIAM CARTER COMPANY,**<br><br>     **Defendant,** | **2:12-cv-00446** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**CHARMING SHOPPES INC.,**<br><br>        **Defendant,** | **2:12-cv-00447** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**CHICO'S FAS INC.,**<br><br>        **Defendant,** | **2:12-cv-00448** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**CITI TRENDS INC.,**<br><br>        **Defendant,** | **2:12-cv-00449** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**CLAIRE'S BOUTIQUES, INC.,**<br><br>        **Defendant,** | **2:12-cv-00450** |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00451** |
| **COLDWATER CREEK INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00452** |
| **DAVID'S BRIDAL INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00453** |
| **DEB SHOPS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00454** |
| **DELIAS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**DIESEL U.S.A. INC.,**<br><br>    **Defendant,** | **2:12-cv-00456** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**DONNA KARAN INTERNATIONAL INC.,**<br><br>    **Defendant,** | **2:12-cv-00457** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**LVMH MOET HENNESSY LOUIS VUITTON INC.,**<br><br>    **Defendant,** | **2:12-cv-00458** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**DOTS, LLC,**<br><br>    **Defendant,** | **2:12-cv-00459** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**DRAPER'S & DAMON'S INC.,**<br><br>    **Defendant,** | **2:12-cv-00460** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**EDDIE BAUER LLC,**<br><br>    **Defendant,** | **2:12-cv-00461** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ESPRIT US RETAIL LIMITED,**<br><br>    **Defendant,** | **2:12-cv-00462** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**FACTORY CONNECTION LLC,**<br><br>    **Defendant,** | **2:12-cv-00463** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**THE FINISH LINE INC.,**<br><br>        **Defendant,** | **2:12-cv-00464** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**FOREVER 21 RETAIL INC.,**<br><br>        **Defendant,** | **2:12-cv-00465** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**FORMAL SPECIALISTS LTD.,**<br><br>        **Defendant,** | **2:12-cv-00466** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**FREDERICK'S OF HOLLYWOOD STORES INC.,**<br><br>        **Defendant,** | **2:12-cv-00467** |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:12-cv-00468** |
| **GROUPE DYNAMITE, INC. D/B/A GARAGE,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:12-cv-00469** |
| **GUESS? RETAIL INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:12-cv-00470** |
| **H&M HENNES & MAURITZ LP,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| v. | **2:12-cv-00471** |
| **HANESBRANDS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|     **Plaintiff,** | |
| **v.** | **2:12-cv-00472** |
| **HOT TOPIC INC.,** | |
|     **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|     **Plaintiff,** | |
| **v.** | **2:12-cv-00473** |
| **HUGO BOSS FASHION INC.,** | |
|     **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|     **Plaintiff,** | |
| **v.** | **2:12-cv-00474** |
| **J. CREW GROUP INC.,** | |
|     **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|     **Plaintiff,** | |
| **v.** | **2:12-cv-00475** |
| **JIMMY JAZZ INC.,** | |
|     **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**JOS. A. BANK CLOTHIERS INC.,**<br><br>    **Defendant,** | **2:12-cv-00476** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ALCO STORES INC.**<br><br>    **Defendant,** | **2:12-cv-00477** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**FRED'S INC.,**<br><br>    **Defendant,** | **2:12-cv-00478** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**BROWN SHOE COMPANY INC.,**<br><br>    **Defendant,** | **2:12-cv-00480** |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00481** |
| **COLLECTIVE BRANDS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00482** |
| **CROCS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00483** |
| **DSW INC. D/B/A DSW SHOE INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00484** |
| **FLEET FEET INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00486** |
| **GENESCO INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00487** |
| **HEELY'S INC,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00488** |
| **JUSTIN BOOT COMPANY,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00520** |
| **AMERICAN GREETINGS CORPORATION,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**HALLMARK CARDS, INC.,**<br><br>    **Defendant,** | **2:12-cv-00521** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**HICKORY FARMS INC.,**<br><br>    **Defendant,** | **2:12-cv-00522** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**SPENCER GIFTS LLC,**<br><br>    **Defendant,** | **2:12-cv-00523** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**INTERNATIONAL COFFE & TEA, LLC,**<br><br>    **Defendant,** | **2:12-cv-00524** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**THINGS REMEMBERED, INC.,**<br><br>      **Defendant,** | **2:12-cv-00525** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**THE YANKEE CANDLE COMPANY,**<br><br>      **Defendant,** | **2:12-cv-00526** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**BOSE CORPORATION,**<br><br>      **Defendant,** | **2:12-cv-00527** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**GUITAR CENTER INC.,**<br><br>      **Defendant,** | **2:12-cv-00528** |

| | |
|---|---|
| **GEOTAG INC.,** | |
|     **Plaintiff,** | |
| **v.** | **2:12-cv-00529** |
| **PROGRESSIVE CONCEPTS INC.,** | |
|     **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|     **Plaintiff,** | |
| **v.** | **2:12-cv-00530** |
| **24 HOUR FITNESS WORLDWIDE INC.,** | |
|     **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|     **Plaintiff,** | |
| **v.** | **2:12-cv-00531** |
| **BALLY TOTAL FITNESS CORPORATION,** | |
|     **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|     **Plaintiff,** | |
| **v.** | **2:12-cv-00532** |
| **BARE ESCENTUALS INC.,** | |
|     **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|       **Plaintiff,** | |
| **v.** | **2:12-cv-00533** |
| **BIOSCRIP INC.,** | |
|       **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|       **Plaintiff,** | |
| **v.** | **2:12-cv-00534** |
| **CRABTREE & EVELYN,** | |
|       **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|       **Plaintiff,** | |
| **v.** | **2:12-cv-00535** |
| **CURVES INTERNATIONAL INC.,** | |
|       **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
|       **Plaintiff,** | |
| **v.** | **2:12-cv-00536** |
| **GOLD'S GYM INTERNATIONAL INC.,** | |
|       **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00537** |
| **GREAT CLIPS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00538** |
| **L.A. FITNESS INTERNATIONAL LLC,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00539** |
| **LIFE TIME FITNESS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00540** |
| **M.A.C. COSMETICS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00541** |
| **MERLE NORMAN COSMETICS,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00542** |
| **VITAMIN COTTAGE NATURAL FOOD MARKETS, INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00543** |
| **REGIS CORPORATION,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00544** |
| **SALLY BEAUTY SUPPLY LLC,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**SEPHORA USA INC.,**<br><br>        **Defendant,** | **2:12-cv-00545** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**TONI&GUY USA, LLC,**<br><br>        **Defendant,** | **2:12-cv-00546** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**ULTA SALON, COSMETICS & FRAGRANCE INC.,**<br><br>        **Defendant,** | **2:12-cv-00547** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**VITAMIN SHOPPE INDUSTRIES, INC.,**<br><br>        **Defendant,** | **2:12-cv-00548** |

| | |
|---|---|
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**EYEMART EXPRESS, LTD.,**<br><br>    **Defendant,** | **2:12-cv-00549** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**LUXOTTICA RETAIL MORTH AMERICA INC.,**<br><br>    **Defendant,** | **2:12-cv-00550** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**NATIONAL VISION INC.,**<br><br>    **Defendant,** | **2:12-cv-00551** |
| **GEOTAG INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**U.S. VISION INC.,**<br><br>    **Defendant,** | **2:12-cv-00552** |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00554** |
| **JOS. A. BANK CLOTHIERS INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00555** |
| **BUTH-NA-BODHAIGE INC.,** | |
| **Defendant,** | |

| | |
|---|---|
| **GEOTAG INC.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00556** |
| **PSP GROUP, LLC,** | |
| **Defendant,** | |

| | |
|---|---|
| **WHERE 2 GET IT, INC.; et al.,** | |
| **Plaintiff,** | |
| **v.** | **2:12-cv-00149** |
| **GEOTAG INC.,** | |
| **Defendant.** | |

**GEOTAG INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

Daniel Mount
Kevin Pasquinelli
Mount Spelman & Fingerman, PC
333 West San Carlos Street
Riverpark Tower, Suite 1650
San Jose, CA 95110
Telephone: (408) 279-7000
e-mail: dan@mount.com
           kpasquinelli@mount.com

David R. Bennett
P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail:  dbennett@directionip.com

Craig Tadlock
Texas State Bar No. 00791766
Keith Smiley
Texas State Bar No. 24067869
Tadlock Law Firm
2701 Dallas Parkway, Suite 360
Plano, Texas 75093
Telephone: (903) 730-6789
e-mail: craig@tadlocklawfirm.com
           keith@tadlocklawfirm.com

*Attorneys for GeoTag, Inc.*

Dated:  November 28, 2012

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      OVERVIEW OF THE '474 PATENT ....................................................................... 2

        A.      The '474 patent teaches databases, generally, in a system for integrating
                geographical and topical information. .................................................................2

        B.      Another aspect of the invention uses the tremendous advantage of
                integrating geographical and topical information by "dynamically
                replicating" entries from broader geographical areas into narrower
                geographical areas........................................................................................3

II.     APPLICABLE LAW ............................................................................................. 4

III.    DISPUTED CLAIM TERMS TO BE CONSTRUED.......................................... 6

        A.      Hierarchy........................................................................................................7

                1.      "hierarchy"; "hierarchically organized"; "hierarchy of geographical
                        areas"....................................................................................... 7

                2.      "wherein said geographical areas are hierarchically organized".................... 8

        B.      "database" ......................................................................................................9

        C.      "entry"/"entries" ..........................................................................................10

        D.      The Dynamically Replicated Terms and Phrases .................................................11

                1.      "dynamically replicating"/"dynamically replicated" ................................... 12

                2.      "replicated" and "replicating" ........................................................ 13

                3.      "geographical search area".............................................................. 13

                4.      "dynamically replicating an entry from broader geographical area into
                        said geographical search area"................................................................ 14

                5.      "wherein within said hierarchy of geographic areas at least one of
                        said entries associated with a broader geographical area is
                        dynamically replicated into at least one narrower geographical
                        area" (# 1) and "wherein at least one of said entries in said
                        geographical areas of relatively larger expanse is dynamically

replicated into at least one of said geographical areas of smaller expanse" (# 2) ........................................................................................ 14

E.     "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (#1); "entries corresponding to each of said hierarchy of geographical is further organized into topics" (#2); "organizing said entries corresponding to said plurality of geographical areas into one or more topics" (#3) ........................................................ 15

F.     "a database of information organized into a hierarchy of geographical areas"(# 1); "said database of information organized into a predetermine hierarchy of geographical areas" (# 2) ............................................... 16

G.     "on-line information" ........................................................................ 17

H.     "organizing a database of on-line information into a plurality of geographic areas" ............................................................................. 18

I.      "search engine" ................................................................................ 19

J.      "said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area" (# 1); "said search engine further configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area" (# 2); "directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area" (# 3) .......................................... 20

K.     "organizer" ...................................................................................... 21

IV.    DISPUTED CLAIM TERMS THAT DO NOT REQUIRE CONSTRUCTION ............. 22

A.     "data records" .................................................................................. 23

B.     "topics" ............................................................................................ 25

C.     "narrower geographical area" and/or geographical area of relatively smaller expanse"; and "broader geographical area" and/or "geographical area of relatively larger expanse" ........................................................ 27

CONCLUSION ............................................................................................................ 29

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2008).................................................................... 5, 10, 17

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
    340 F.3d 1298 (Fed. Cir. 2003) ...................................................................... 11

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004)......................................................................... 4

*Cooper Tech. Co. v. Thomas & Betts Corp.*,
    2008 WL 438339 (E.D. Tex. Feb. 15, 2008) ..................................................... 5

*Geomas (Int'l) Ltd, et al. v. Idearc Media Services-West, Inc.*,
    C.A. No. 2:06-CV-00475 (E.D. Tex.)......................................................... passim

*Karlin Technology, Inc. v. Surgical Dynamics, Inc.*,
    177 F.3d 968 (Fed. Cir. 1999)....................................................................... 21

*Liebel-Flarsheim Co. v. Mallinckrodt, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)..................................................................... 5, 10

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 388-90 (1996)........................ 4, 6

*Orion IP, LLC v. Staples, Inc., et al.*,
    Case No. 2:04-cv-297-LED, slip op. (E.D. Tex. Dec. 15, 2005)............................. 23

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .............................................. 4, 5, 6, 10

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998)........................................................................ 6

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001)........................................................................ 6

*Teleflex Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)........................................................................ 6

*Thorner v. Sony Computer Entertainment America LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)........................................................................ 6

*Wilson Sporting Goods Co. v. Hilerich & Bradsby Co.*,
    442 F.3d 1322 (Fed. Cir. 2006)........................................................................ 8

**Other Authorities**

IBM Dictionary of Computing
   (10th Ed. 1993) ......................................................................................................... 9

Random House Personal Computer Dictionary
   (2d Ed. 1996) ............................................................................................................ 9

Pursuant to the Court's First Amended Scheduling and Discovery Order and P.R. 4-5, plaintiff, GeoTag, Inc. ("GeoTag"), serves this opening claim construction brief on Lead Defendant and defendants in the above captioned cases (collectively "Defendants").

## NATURE AND STAGE OF PROCEEDINGS

GeoTag alleges that Defendants infringe U.S. Patent No. 5,930,474 ("the '474 patent").[1] The parties are jointly requesting the construction of 17 terms; GeoTag is requesting the construction of 6 additional terms that Defendants contend do not require construction; and Defendants are requesting the construction of 6 additional terms that GeoTag contends do not require construction.  The 17 jointly requested terms and 6 terms requested by GeoTag were previously construed by Magistrate Judge Charles Everingham IV in *Geomas (Int'l) Ltd., et al. v. Idearc Media Services-West, Inc.*, Civil Action No. 2:06-cv-00475 in the Eastern District of Texas ("*Geomas*").[2]  A copy of that opinion is submitted as Exhibit B.  As set forth below, because the rulings were correct, GeoTag submits that this Court should adopt *in toto* the construction rulings made in *Geomas* for the terms at issue in these cases.  A copy of the asserted claims identifying the terms and phrases in dispute in bold/underline is attached as Exhibit C for the Court's convenience.  The parties do not agree on the construction of any claim terms.

There is another case involving the '474 patent in the District of Delaware in which the court there is also considering the construction of many of the same claim terms at issue here.  In Delaware, Microsoft and Google filed a declaratory judgment action against GeoTag asserting that they do not infringe the '474 patent and the '474 patent is invalid.  *Microsoft Corporation*

---

[1]     A copy of the '474 patent is attached as Exhibit A ("Ex. A") to the Declaration of David R. Bennett, concurrently filed herewith.  Hereinafter, all citations to exhibits refer to the exhibits attached to the Declaration of David R. Bennett.

[2]     No objections were made in *Geomas* to the constructions of Magistrate Judge Everingham.  The case settled prior to trial.

*and Google Inc. v. GeoTag, Inc.*, Case No. 11-cv-175-RGA (D.Del.). Briefing has been completed and the court in Delaware held its claim construction hearing on November 20, 2012. GeoTag is requesting that the court in Delaware construe the terms consistent with Magistrate Judge Everingham's constructions in *Geomas*, whereas Microsoft and Google are proposing constructions in Delaware that are different from *Geomas* and most of which are also different from Defendants' proposed constructions in this case.

## ARGUMENT

I.   **OVERVIEW OF THE '474 PATENT**

   A.   **The '474 patent teaches databases, generally, in a system for integrating geographical and topical information.**

The application leading to the '474 patent was filed on January 31, 1996 and issued on July 27, 1999. (Ex. A). The '474 patent discloses systems and methods "for integrating geographically organized information with topical information." (Ex. A at 2:49-52). The inventors recognized that organizing data in databases, both geographically and topically, was advantageous because such organization permitted the system to provide specific topical information to the Internet user for the specific level(s) of geography that interested the user (*e.g.,* local information at the city or even the zip code level, or regional information at the broader regional or state level). (Ex. A, *e.g.*, Abstract; 7:20-30).

The patent does not require implementing the systems using any specific type of databases. Throughout the patent, the databases are referred to generically as "databases" rather than the more restrictive "hierarchical database."[3] On the contrary, the patent teaches

---

[3] The only mention of a "hierarchically structured database" is in the background section of the patent. Ex. A at 1:14-15. In a hierarchical database, the data is organized into a tree-like structure. Although such a structure is not required by the claims or specification, Defendants are incorrectly proposing that several limitations require "encompassing," which would require a tree-like structure.

that *geographical* information in the databases was organized into hierarchies: "[t]he organizer comprises a database of information organized into a hierarchy of geographical areas"; "[t]he geography database contains hierarchically ordered geographic information."  (Ex. A at 3:2-4; 8:49-50; *generally* 8:37-9:4).   Moreover, the patent does not enumerate the number of databases.  For example, referring to the database in Figure 8, the specification teaches that the databases "need not comprise a single database stored in a single computer" and "can actually comprise information stored over several [ ] routing hubs.  (Ex. A at 18:55-59).

**B.     Another aspect of the invention uses the tremendous advantage of integrating geographical and topical information by "dynamically replicating" entries from broader geographical areas into narrower geographical areas.**

The inventors realized the tremendous practical benefit of organizing data both geographically and topically.  Namely, this organization permits data such as a business yellow page listing (*e.g.,* business name, address, telephone number, etc.) to exist at multiple geographic and/or topical levels without the need to store the listing at each individual level.  Not only does this organization greatly simplify changing listing information,[4] but it also permits businesses to geographically and topically tailor their Internet presence to their specific customer base and business type.

For example, "Bill's hardware" sells hardware products locally in Los Angeles.  (*see* Ex. A at 16:57-58).   Bill, therefore, may only want to be associated with a local, city-level geographical area (*e.g.,* Los Angeles) and a single topical category (*e.g.,* "Hardware Stores"). (*Id.* at 16:59).   Referring to the "Welcome to Los Angeles" interface view of Figure 15, an Internet user could locate Bill's hardware by, for example, clicking on the appropriate graphical

---

[4]      For example, if a business changed its address or telephone number there is only one listing to change as opposed to changing listings for each city, county, or state where the business has chosen to advertise.

icon depicting the topic hardware stores (*see* box 1520), clicking a related entry 1540 (for interfaces where the topical information was displayed, for example, as related entries), or by any number of other methods.   (*Id.* at 22:6-27).   The organization of Bill's data both geographically and topically makes such an operation possible.

## II.   APPLICABLE LAW

Claim construction presents a question of law to be decided by the court.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 388-90 (1996).   "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (internal quotation marks omitted).   In construing claims, courts rely primarily on the patent's intrinsic evidence (*i.e.*, the patent and its prosecution history) to determine the scope of the invention.  *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004).   A court also may rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Markman*, 52 F.3d at 980; *see also, Phillips*, 415 F.3d at 1314.

Where the meaning of a claim term is in dispute, the disputed term is assigned its ordinary and customary meaning as viewed through the eyes of a person of ordinary skill in the art at the time of the invention after considering all of the intrinsic evidence.  *Phillips*, 415 F.3d at 1313.   When that ordinary meaning is "readily apparent," claim construction "involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.   In other instances, however, the ordinary and customary meaning is not apparent and must be divined from other sources, including "the words of the claims themselves, the remainder of the specification, the prosecution, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  *Id.*; *see also*

4

*Cooper Tech. Co. v. Thomas & Betts Corp.,* 2008 WL 438339 *2 (E.D. Tex. Feb. 15, 2008).

The claims themselves provide "substantial guidance" to the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. Differences in a term's usage in claims, for example, often provide a useful guide in understanding the meaning of a particular claim term. *Id.*; *see also Cooper Tech.,* 2008 WL at *6. In fact, a dependent claim containing a particular limitation creates a presumption that the limitation in question is not present in the independent claim. *Acumed LLC v. Stryker Corp.,* 483 F.3d 800, 806 (Fed. Cir. 2008); *Phillips,* 415 F.3d at 1315; *Liebel-Flarsheim Co. v. Mallinckrodt, Inc.,* 358 F.3d 898, 906, 910 (Fed. Cir. 2004) ("the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intent to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'") (citations omitted).

The claims, of course, are not read alone. Rather, the person of ordinary skill in the art is deemed to read the claim terms in the context of the entire patent, including the specification and prosecution history. *Phillips,* 415 F.3d at 1313. For example, where the specification reveals a special definition given to a claim term by the inventor that differs from the meaning it would otherwise possess, the inventor's lexicography controls. *Id.* at 1316. Similarly, where the specification reveals an intentional disclaimer, or disavowal, of claim scope by the inventor, the objective evidence of the inventor's intention is again dispositive. *Id.* But, the Federal Circuit has cautioned, "[a]lthough the specification often describes very specific embodiments of the invention," it is improper to "confin[e] the claims to those embodiments." *Id.* at 1323; *see also Liebel-Flarsheim,* 358 F.3d at 906. For example, even when the specification describes only a single embodiment, the claims cannot be read restrictively unless the patentee has manifestly stated a clear intention to limit claim scope. *Thorner v. Sony Computer Entertainment America*

*LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *Teleflex Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327-28 (Fed. Cir. 2002).  Nor is an applicant "required to describe in the specification every conceivable and possible future embodiment of his invention."  *Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 1344 (Fed. Cir. 2001).

A court should also consider a patent's prosecution history, if it is in evidence.  *Phillips,* 415 F.3d at 1317.  The prosecution history, however, "cannot 'enlarge, diminish, or vary' the limitations of the claims."  *Markman,* 52 F.3d at 98 (citations removed).  Additionally, although extrinsic evidence (*e.g.,* expert and inventor testimony, dictionaries, and treatises) may be used in claim construction, such evidence is generally "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Phillips,* 415 F.3d at 1318.  There is, ultimately, no magic formula for claim construction—the correct construction will be the one that "stays true to the claim language and most naturally aligns with the patent's description of the invention."  *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

## III.    DISPUTED CLAIM TERMS TO BE CONSTRUED

GeoTag's proposed constructions are consistent with the claims, the specification, the prosecution history, and the construction of the same terms in the *Geomas* case.  Defendants' proposed constructions are inconsistent with the claims and the specification and they attempt to reargue issues that were explicitly rejected by the court in *Geomas*.  As explained in more detail below, the Court should therefore adopt GeoTag's proposed constructions.

A.      **Hierarchy**

    1.      **"hierarchy"; "hierarchically organized"; "hierarchy of geographical areas"**

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "hierarchy"(claims 1, 5, 20), "hierarchically organized" (claims 16, 32, 35), "hierarchy of geographical areas" (claims 1, 4, 20), and "wherein said geographical areas are hierarchically organized" (claims 32) | "an arrangement of related information or data, ordered from broader general categories to narrower specific ones" |

The first three of these four phrases should be construed together by way of the construction of "hierarchy," as they were construed in *Geomas*.  (*See* Ex. B at 8-10).

The terms "hierarchy" and "hierarchically" are used generically in the patent, not as strict terms of art.  For example, "hierarchy" and "hierarchically" are used in the claims to describe the general organization of data, not to describe the specific structure of database(s).  Claim 1 recites "a database of information organized into a hierarchy of geographical areas." The database is not a "hierarchical database" and it is the geographical information that is organized into hierarchies, not the database.  Importantly, the claims do not require the "hierarchy of geographical areas" to have a tree-like structure in which broader areas encompassing narrower areas.   This interpretation is supported by the doctrine of claim differentiation in which claim 5 provides the narrowing "encompassing" limitation.   Claim 5, which depends from claim 1, specifies a particular, and more limited, type of hierarchy in which broader geographical areas encompass narrower geographical areas:

        said hierarchy has a structure comprising plural geographical levels
        into which the geographical areas are geographically categorized
        by size to provide a low level, one or more intermediate levels and

> a high level, each of the geographical levels above the lowest level encompassing a plurality of lower level geographical areas.

(Ex. A at 38:16 - 39:5).   Where, as here, a dependent claim adds a limitation, there is a presumption that the limitation in question is not present in the independent claim.  *Philips*, 415 F.3d at 1314-15.

Examination of the remaining claims further strengthens that presumption.  Claim 20, for example, requires that the hierarchy of geographical areas be "predetermined" and claim 26 requires that it be "predefined."  The use of these modifiers in both claims suggests that the term "hierarchy" itself is not so limited.  *See, e.g., Wilson Sporting Goods Co. v. Hilerich & Bradsby Co.*, 442 F.3d 1322, 1328 (Fed. Cir. 2006) (modifiers produce significant differences in claims).

The specification likewise supports GeoTag's proposed construction, as found by Magistrate Judge Everingham in *Geomas*.  (*See* Ex. A at 8:59-9:4; 3:46-56; 9:28-34; 8:22-36; Ex. B at 10).  In particular, Magistrate Judge Everingham found that the specification describes that there is a relationship between the entries in the hierarchy, however, that relationship is not limited to a tree-like structure.  (Ex. B at 9-10).  Defendants proposed construction should be rejected because they seek to construe "hierarchy" to require a tree-like structure in which the broader geographic areas "encompass" narrower geographic areas, the exact limitation rejected in the *Geomas* opinion for improperly limiting the claim to a preferred embodiment.  (*Id.*).

For the reasons set forth above and in the *Geomas* opinion, as used in the first three phrases, the Court should adopt GeoTag's construction of "hierarchy" as "an arrangement of related information or data, ordered from broader general categories to narrower specific ones."

### 2.   "wherein said geographical areas are hierarchically organized"

The fourth phrase, "wherein said geographical areas are hierarchically organized," should be construed consistent with the construction of "hierarchy," *i.e.*, "wherein said geographical

areas are ordered from broader geographical categories to narrower geographical categories."

(*See infra* section III.F).

**B.      "database"**

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "database" (claims 1, 20, 31) | "a collection of information or data organized such that a computer program can quickly retrieve selected information or data" |

GeoTag's proposed construction is consistent with the plain and ordinary meaning of

"database" and is identical to the construction adopted by Magistrate Judge Everingham in the

*Geomas* case.  (Ex. B at 10).

The term "database" should be accorded its plain and ordinary meaning.  For example,

the term is defined as follows:

- "(1) A collection of information organized in such a way that a computer program can quickly select the desired pieces of data;" (Ex. D, Random House Personal Computer Dictionary at 126-27 (2d Ed. 1996)) and

- "(1) A collection of data with a given structure for accepting, storing, and providing, on demand, for multiple users." (Ex. E, IBM Dictionary of Computing at 165 (10th Ed. 1993)).

The patent's usage of "database" is consistent with GeoTag's proposed construction.

Referring to claim 1, the "database" is described as having entries ("a database… wherein

entries… are further organized…."). Moreover, the specification unmistakably and repeatedly

refers to a database containing "information" or "data" interchangeably.  (*See, e.g.,* Ex. A at

38:45-47; 39:49-51; 40:18-20, 48-49).  Defendants seek to limit "database" to a particular

structure, an argument inconsistent with the specification and that was rejected by the court in

*Geomas*.  (Ex. B at 11, *also* 8-10).  GeoTag's proposed construction should, therefore, be

adopted because it aligns with both dictionary definitions and is consistent with the claim language, specification, and the construction in *Geomas*.

### C.    "entry"/"entries"

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "entry"/"entries" (claims 1, 17, 18, 20, 24, 31, 36) | "data contained in a database" |

Both the claims and the specification support GeoTag's proposed construction and the construction is identical to the construction in *Geomas*.  (*See* Ex. B at 15-17).

Each of the three independent claims (as well as independent claim 26, which is not asserted in this matter) describes organizing entries corresponding to geographical areas into topics.  (Ex. A at 38:45-47; 39:49-51; 40:18-20, 48-49).   And each independent claim has dependent claims that further limit "entries" to "data records." (*See* Ex. A at 39:34-35; 40:5-6, 28-29, 66-67, claim 18 ("wherein said entries comprise a plurality of data records") and claims 24, 27 and 36 ("wherein entries comprise data records")).  The claim language, thus, is clear and unambiguous and the doctrine of claim differentiation supports the construction.  An "entry" may include a data record; but it is not limited to data records.  *Acumed LLC,* 483 F.3d at 806; *Phillips*, 415 F.3d at 1315; *Liebel-Flarsheim*, 358 F.3d at 910.

This is consistent with the specification throughout which the words "entry" and "entries" are used broadly to include both an individual item or piece of data (*e.g.,* a city name), as well as to refer to compilations of data (*e.g.,* a yellow page listing, final destination, or data records), and to entries as a complete set of data about specific businesses or institutions.   For example, the specification describes each of the geographic links of Figure 15 as an entry—"the entry 'Points of Interest for Los Angeles," the entry 'Southern California,' ... the entry 'California,'…." (*See, e.g.,* Ex. A at 12:3-5, 22:39-23:3).  As another example, Table 7 refers to sample "entries" for

the geography database.   (Ex. A at 18:62-63, Table 7).   More broadly, the specification also depicts sample "entries" in the yellow pages database as including business name, address, phone number, etc.   (Ex. A at 24:30-31, Table 9, *also* 12:27-32 (an entry can encompass one or more other entries)).   These multiple usages are consistent with the term's usage in the claims– broadly in the independent claims and more narrowly in the dependent claims–and support GeoTag's construction because it is the only construction that embraces the full scope of the specification's meanings. *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1308 (Fed. Cir. 2003) ("varied use of a disputed term in written description attests to the breadth of a term rather than providing a limiting definition").   On the other hand, Defendants are seeking to limit "entry" to "data records," an argument that is not supported by the claims or specification and was rejected in *Geomas*.   (*See* Ex. B at 15-17).

For the reasons set forth above and *Geomas* opinion, this Court should adopt GeoTag's proposed construction of "entry"/"entries" as "data contained in a database."

### D.      The Dynamically Replicated Terms and Phrases

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "dynamically replicating"/"dynamically replicated"  (claims 1, 20, 31) | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance" |
| "replicated" and "replicating" (claims 1, 20, 31) | "copied or inherited" and "copying or inheriting" |
| "geographical search area" | "the particular selected geographical area for which the associated data records in the database are to be searched" |
| "dynamically replicating an entry from broader geographical area into said geographical search area"  (claim 31) | "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance, at least a piece of data contained in a database that is associated with a broader geographical area into an area from |

| | which topical information can be accessed that is a subset of that broader geographical area" |
|---|---|
| "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area" (#1) (claim 1)<br><br>"wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse" (# 2) (claim 20) | ## 1, 2: "wherein within the hierarchy of geographical areas, at the time needed rather than at a time decided or established in advance, at least a piece of data in a database associated with a broader geographical area is automatically copied or inherited into at least one narrower geographical area" |

### 1.    "dynamically replicating"/"dynamically replicated"

GeoTag submits that these phrases should be construed as "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance." There is not only support in the patent for GeoTag's proposed claim construction but two federal authorities, namely the court in *Geomas* and the USPTO, have endorsed this position.

Magistrate Judge Everingham dealt with these phrases at length in *Geomas*. (*See* Ex. B at 21-23). As set forth therein, although they are supported by the specification, these terms do not appear *per se* in the specification. (Ex. B at 22, 23 (*citing* '474 Patent at 19:29-39; 19:46-63)). Rather, they appear in a response from the inventors to the Patent Office wherein the phrase "dynamically replicating" was employed "'to clarif[y] the patentability distinguishing features of the invention.'" (*Id.*; *see* Ex. F at 6). As Magistrate Judge Everingham also noted, in the Notice of Allowance, the patent examiner cites "dynamically replicating" to mean "'automatically inheriting an entry from a broader geographical area into said geographical search area.'" (Ex. B at 22; *see* Ex. G at 3). The court therein found that the specification supported such an interpretation. (Ex. B at 23 (*citing* '474 Patent at 19:29-39; 19:46-63)).

For the reasons set forth above and in the *Geomas* opinion, these phrases should be construed to mean "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance."

### 2.   "replicated" and "replicating"

The court in *Geomas* interpreted these words in connection with the terms "dynamically replicating"/"dynamically replicated."  (*See* Ex. B at 21-23).   The court found that "replicate" was "copying or inheriting" based on the prosecution history and the specification.  (Ex. B at 22; *see* Ex. G at 3; Ex. A at 19:29-39; 19:46-63; 23:37-38, 48-51).  Defendants' construction is not supported by the specification.  Defendants agree that the term includes "copying" but they improperly disregard "inheriting," a term used in the prosecution history and the patent. Defendants also seek to limit the term to "at the time of a search," which is vague and would require further interpretation.  Therefore, for the reasons set forth above and in the *Geomas* opinion, GeoTag's proposed construction of "dynamically replicated" should be adopted.

### 3.   "geographical search area"

GeoTag contends that this term should be construed to mean "the particular selected geographical area for which the associated data records in the database are to be searched."  This construction was adopted by the court in *Geomas*.  In the co-pending *Microsoft and Google v. GeoTag* case, Microsoft and Google both agreed to GeoTag's construction.

The court in *Geomas* stated that claims 20 and 31 indicate that the selected geographical area is the geographical search area.  (Ex. A at 39:53-56; Ex. B at 20).  The specification provides additional support for this definition.  In one example, the Los Angeles area defines a geographical search area because it is the geographic area the user selected.  (Ex. A at 7:11-18; Ex. B at 20).

13

For the reasons set forth above and in the *Geomas* opinion, GeoTag's proposed construction that "geographical search area" means "the particular selected geographical area for which the associated data records in the database are to be searched" should be adopted.

### 4.      "dynamically replicating an entry from broader geographical area into said geographical search area"

GeoTag's proposed construction for this phrase is "automatically copying or inheriting, at the time needed rather than at a time decided or established in advance, at least a piece of data contained in a database that is associated with a broader geographical area into an area from which topical information can be accessed that is a subset of that broader geographical area." GeoTag's proposed construction is the same as the construction adopted in the *Geomas* opinion. (Ex. B at 24-25).  In addition to the errors in Defendants' proposed constructions of the included terms discussed above, Defendants' proposed construction also seeks to erroneously limit the system to a database having a hierarchical structure in which the narrower areas are "encompassed" within the broader areas, an argument rejected by the court in *Geomas*.  (*See* Ex. B at 8-11; *infra* §IV.C).  For the reasons set forth above and in the *Geomas* opinion, GeoTag's proposed construction of this term should be adopted.

### 5.      "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area" (# 1) and "wherein at least one of said entries in said geographical areas of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse" (# 2)

GeoTag's proposed constructions are identical to the construction of these terms in *Geomas*.  The constructions are also consistent with the construction of the terms "hierarchy," "entries," and "dynamically replicated" as discussed in sections III.A., III.C, and III.D.1, which are the constructions adopted by the court in *Geomas*.  (*See* Ex. B at 23-24).  Again, in addition

to the errors in Defendants' proposed constructions of the included terms, Defendants' proposed constructions seek to erroneously limit the system to a database having a hierarchical structure in which the narrower areas are "encompassed" within the broader areas, an argument rejected by the court in *Geomas*.  (*See* Ex. B at 8-11; *infra* §IV.C).  Therefore, for the reasons set forth above and in the *Geomas* opinion, GeoTag's proposed construction of these terms should be adopted.

E.  **"entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (#1); "entries corresponding to each of said hierarchy of geographical is further organized into topics" (#2); "organizing said entries corresponding to said plurality of geographical areas into one or more topics" (#3)**

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics" (#1) (claim 1)  "entries corresponding to each of said hierarchy of geographical is further organized into topics" (#2) (claim 20)  "organizing said entries corresponding to said plurality of geographical areas into one or more topics" (#3) (claim 31) | ##1, 2: "data in the database associated with a geographic area in the hierarchy of geographical areas is further organized to permit selected data to be retrieved into topics"  #3: "organizing data contained in the database corresponding to one or more geographical areas to further permit selected data to be retrieved into one or more topics" |

GeoTag's proposed constructions are supported by the plain meaning of the claims and are identical to the constructions adopted by the court in *Geomas*.  (Ex. B at 17-18).

The claim language demonstrates that the entries, which are associated with a geographical area in the hierarchy of geographical areas, are organized to permit selected data to be retrieved into topics.  In other words, it is the entries and not the topics that correspond to the hierarchy of geographical areas.  (Ex. B at 18).  For example, claims 20 and 31 state that the search engine may select at least one or more than one geographical area to define a geographical search area.  (Ex. A at 39:53-55; 40:50-52).  And within that geographical search area, which

may be more than one geographical area, the claims further require the search of topics or the display of topics.  (Ex. A at 39:53-55, 59-61; 40:50-52, 55-56).  In both cases, the topics may be associated with more than one geographical area.  The specification also supports GeoTag's proposed construction.  (*See, e.g.* Ex. A at 2:45-52).  Defendants' proposed construction again seeks to erroneously require a tree-like structured in which the database is first ordered geographically and then the entries for "each particular geographic area" are ordered into topics associated with "that particular geographic area."  This tree-like structure for the database was rejected in *Geomas*, and should likewise be rejected here as unsupported by the claims or specification.  (*See* Ex. B at 10).

For the reasons set forth above and in the *Geomas* opinion, the Court should adopt GeoTag's construction of these phrases.

**F.    "a database of information organized into a hierarchy of geographical areas"(# 1); "said database of information organized into a predetermine hierarchy of geographical areas" (# 2)**

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "a database of information organized into a hierarchy of geographical areas" (claim 1) (# 1)<br><br>"said database of information organized into a predetermine hierarchy of geographical areas" (claim 20) (# 2) | # 1: "a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical categories"<br><br># 2: "a collection of interrelated information or data organized such that a computer program can quickly retrieve selected information or data, ordered from broader geographical categories to narrower geographical categories that are decided or established in advance" |

GeoTag proposed constructions are consistent with the claim language, the specification, and are identical to the constructions adopted in *Geomas*.  (*See* Ex. B at 11-13).  The only

difference between the two phrases is the use of the term "predetermined" in # 2.  As explained below, GeoTag's proposed construction recognizes that it is the organization or association of the data in hierarchies that is important, not the type of hierarchy, specific data format, or specific type of database employed.

The plain reading of claim 1 indicates that it is the "information" (*i.e.*, the data) that is organized into a hierarchy of geographic areas, not the database itself.  The claim does not limit the database to any particular structure.  The specification also supports this conclusion.  To begin, the specification refers to the structure of the database only one time, referencing a "hierarchically structured database" in the general "Description of Related Art" section.  (Ex. A at 1:15).  Throughout the remainder of the patent the databases are described as containing information or data, not according to any specific structure.   (*Supra* III.A and III.B). Furthermore, the patentee's choice to use the term "hierarchically structured database" in the specification and choice not to do so throughout the remainder of the specification or the claims strongly implies that the inventors did not intend the claims to be limited to any particular type of database.  *Acumed* LLC, 483 F.3d at 807; (Ex. B at 12).

GeoTag's proposed constructions are consistent with the claim language, specification, and the *Geomas* opinion, and therefore should be adopted by the Court.  (*See* Ex. B at 12-13).

G.     **"on-line information"**

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "on-line information" (claim 1, 31) | "information capable of being accessed by a computer" |

GeoTag's construction is consistent with the specification and is the same construction adopted by the court in *Geomas*.  (*See* Ex. B at 13-14).

17

In the Background of the Invention section, the word "on-line" is used in connection with computer services to describe "access" to a database.  (Ex. A at 1:13-23; 1:66-2:11, 21-22).  Likewise, in the Summary of the Invention, the inventors again refer to a system that associates "on-line information" comprising a computer network wherein a plurality of computers have "access" to the network.  (*Id.* at 2:63-66).  "On-line" simply refers to accessibility of information by computers and is not limited to remote access over a network.  (*See id.* at 2:20-24).

GeoTag's proposed constructions are consistent with the claim language, specification, and the *Geomas* opinion, and therefore should be adopted by the Court.  (*See* Ex. B at 13-14).

**H.** **"organizing a database of on-line information into a plurality of geographic areas"**

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "organizing a database of on-line information into a plurality of geographic areas" (claim 31) | "organizing a collection of information that is capable of being accessed by a computer into more than one geographical area" |

GeoTag's proposed construction is the same as the construction adopted by the court in *Geomas* and is consistent with the claims and the specification.  (Ex. B at 14-15).  This construction is also consistent with the proposed constructions of "database" and "on-line information," discussed above.  (*Supra* III.B and III.G).  Defendants' construction is not supported by the specification and improperly narrows the claims because it requires ordering "at the time the database is being organized" and requires that the geographic areas must be "within the database."   For the reasons set forth above and in the *Geomas* opinion, GeoTag's construction should be adopted.  (*See* Ex. B at 14-15).

## I.      "search engine"

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "search engine" (claims 1, 15, 20, 31, 34 and 37) | "software, hardware, and/or firmware that alone or in combination receives search requests and fulfills the received requests through interaction with a database" |

GeoTag's proposed construction is the same as the construction adopted by the court in *Geomas* and is consistent with the claims and the specification. (Ex. B at 18-19).

The "search engine" of claim 1 is "in communication with the database" and is "configured to search geographically and topically." (Ex. A at 38:47-49). The claim language, therefore, describes a generic search engine that is configured to search both geographically and topically.

The specification discloses numerous generic embodiments of search engines that do not limit the records to be searched, and a specific embodiment that does limit the search to a particular geographic subdivision. Figure 8, for example, illustrates the relationships between databases and search engines in one embodiment of the invention. In Figure 8, executable files 315, 520, 620, and 630 represent distinct search engines. (Ex. A at 18:10-15). More specifically, GEO1.EXE represents a geographical search engine, LC1.EXE represents a local content search engine, YP2.EXE represents a yellow pages search engine, and NOTE.EXE represents a note search engine. (*Id.* at 18:20-30). The EXE files receive requests from the server 820 (as indicated by the dashed arrow) and fulfill the requests through interaction with their respective databases. (*Id.* at 18:45-50 (the geographical search engine 315 communicates with the geography database 210, the search engine 520 communicates with the local content

database 230, *etc.*)).  The remainder of the specification also supports GeoTag's broad proposed construction.  (*See* Ex. A at 11:24-33; 14:15-17; 15:54-56; 15:60-16:16; Figs. 5, 6).

For the reasons set forth above and in the *Geomas* opinion, GeoTag's construction of "search engine" should be adopted.  (*See* Ex. B at 18-19).

**J.** **"said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area" (# 1); "said search engine further configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area" (# 2); "directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area" (# 3)**

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| #1 "said search engine further configured to select one of said hierarchy of geographical areas prior to selection of a topic so as to provide a geographical search area" (claim 1)<br><br>#2 "said search engine further configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area" (claim 20)<br><br>#3 "directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area" (claim 31) | #1 "that the software, hardware and/or firmware, alone or in combination, that receives search requests and fulfills the received requests through interaction with a database is configured to select one of the hierarchy of geographical areas prior to the selection of a topic so as to define an area from which topical information can be accessed that is a subset of the entire domain of geography"<br><br>#2 "the software, hardware and/or firmware, alone or in combination, that receives search requests and fulfills the received requests through interaction with a database is configured to select one of the hierarchy of geographical areas so as to define an area from which topical information can be accessed that is a subset of the entire domain of geography"<br><br>#3 "directing software, hardware, and/or firmware executing in a computer, alone or in combination to select one or more geographical areas so as to select an area from which topical information can be accessed that is a subset of the entire domain of geography" |

20

GeoTag's proposed constructions of these three phrases are consistent with the claims and the specification and are the same as the constructions adopted by the court in *Geomas*.  (Ex. B at 20-21).

The main distinction between these three phases is that claim 1 requires selection of one of the hierarchy of geographical areas "prior to" selection of a topic, whereas claims 20 and 31 do not.  *Karlin Technology, Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-972 (Fed. Cir. 1999) ("different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope").   In *Geomas*, Magistrate Judge Everingham agreed with GeoTag's argument that "prior to" should not be read into claims 20 and 31 and that "neither of those claims require the selection of a geographic search area before a topic is selected."   (*Id.* at 21).   Magistrate Judge Everingham also agreed with *Geomas* that the prosecution history "confirms that the order of steps is not important."  (*Id.*).

For the reasons set forth above and in the *Geomas* opinion, GeoTag's constructions should be adopted.  (*See* Ex. B at 20-21).

### K.      "organizer"

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "organizer" (claim 1) | "software, hardware, and/or firmware, that alone or in combination is configured to receive search requests, together with a database and a search engine in communication with the database" |

GeoTag's proposed construction is consistent with the claims and the specification and is the same as the construction adopted by the court in *Geomas*.  (Ex. B at 25-26).  The term "organizer" does not have a plain and ordinary meaning outside the '474 patent.  Its meaning, therefore, should be determined based on the intrinsic evidence.

21

Starting with the claim language, claim 1 states that the "organizer execut[es] in [a] computer network", is "configured to receive search requests," and comprises "a database" and "a search engine in communication with the database."   (Ex. A at Col. 38:40-48).   The specification explains that the "organizer" can execute in a computer network using a user interface (*e.g.*, software such as Netscape web browser) or without a network interface (*e.g.*, hardware and firmware such as through a port server or routing hub).  (Ex. A at Fig. 1, 6:54-57).  Figure 1, for example, depicts an Internet user accessing the web organizer either through port server 112 (via a modem link and an ethernet link) or through routing hub 100 (via high speed data transfer connection and an ethernet link).  (*Id.*).

Defendants contend that the "organizer" is a "network interface," however, Fig. 1 demonstrates a preferred embodiment that does not use a network browser interface, and Magistrate Judge Everingham agreed in *Geomas* noting that claim 1 does not require that the organizer have a network browser interface or that it interact with the user.  (Ex. B at 25-26).  Defendants' further contention that an "organizer" "organizes 'on-line information' into categorized listings to make finding information easier" is not supported by the claims or the specification and attempts to read limitations into the claim.

GeoTag's construction is supported by the specification and was held to be the correct construction in *Geomas*.  *See* Ex. A at Fig. 1; 38:36-58; *Id.* at 26.  Accordingly, for the foregoing reasons and for the reasons stated in the *Geomas* opinion, GeoTag's proposed construction for "organizer" should be adopted.

## IV.   DISPUTED CLAIM TERMS THAT DO NOT REQUIRE CONSTRUCTION

GeoTag contends that the additional 6 claim terms that Defendants ask to be construed do not require construction, and further that Defendants' proposed constructions are not supported by the intrinsic evidence.  It is of course well-settled and undisputed that claim terms that are

used in accordance with their customary and ordinary meaning need no construction by the Court. *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001); *Clear With Computers v. Hyundai Motor America, Inc.*, Case No. 6:09-cv-479, slip. op. at 11 (E.D. Tex. Jan. 5, 2011).  Stated another way, a claim term that is "not used in the claims in any manner different from its ordinary meaning in the art, which is no different than its ordinary lay meaning," does not need construction. *Orion IP, LLC v. Staples, Inc., et al.*, Case No. 2:04-cv-297-LED, slip op. at *7 (E.D. Tex. Dec. 15, 2005).  Neither the parties nor the court in *Geomas* believed that any of these terms required construction.

A.   **"data records"**

| Term or phrase | GeoTag's Proposed Construction |
| --- | --- |
| "data records" (claims 18, 24, 25, 36, and 38) | No need to construe. Plain and ordinary meaning. |

Claims 18, 24, 25, 36, and 38 recite the term "data records."  As discussed below, "data records" has a well-understood plain and ordinary meaning and does not have any special meaning in the art or as disclosed in the '474 patent.  The term is sufficiently clear and, therefore, does not require construction.  Furthermore, in the *Geomas* case and in the co-pending *Microsoft and Google v. GeoTag* case, no parties requested construction of "data records."

Claim 18 states that the "entries comprise a plurality of data records" and the data records are "associated with at least one of said topics and at least one of said geographical areas." Claims 24 and 38 similarly state that the data records are associated with at least one topic. Claim 25 states that the data records contain "information about a particular institution or enterprise."  Claim 36 also states that the data record contains "information about institutions or enterprises" and each data record is associated with at least one topic.  Plainly, the claims

demonstrate that the entries may comprise a plurality of data records that are associated with one or more topics (claim 24).    The data records may also be associated with one or more geographical areas (claim 18) and they may contain information about institutions or enterprises (claims 25 and 36).  The specification also explains that data records can contain any type of data such as name, address, phone number, expiration date of the record, graphics, maps, URLs, codes, text, labels, bullets, etc.  (*e.g.*, Ex. A at 18:60-65, 19:40-42, 46-50, 64-66; 20:7-8, 14-16, 28-29; 24:29-42; Fig. 13; Fig. 17; Table 7).  There is simply no specialized meaning for this term in the art or in the '474 patent and its meaning is readily understood.

Defendants propose that "data record(s)" mean "one or more fields within an entry (*e.g.*, phone number, address)," which is inconsistent with the claims and the specification.  The claims state that the entries may "comprise a plurality of data records" or "comprise data records," not fields.  (Claims 18, 24).  "Data records" initially have no limitation on the information they contain (e.g., claims 18, 24), and only dependent claims further limit the data records to containing information about institutions or enterprises.  (Claims 25, 36).  Therefore, the claims do not support construing "data records" to be limited to fields, or limiting the data records to containing information about institutions, such as phone number and address.

The specification also does not support defendants' proposed construction.  The specification distinguishes data records and fields because it states that the data records "typically include one or more fields," not that the data records are fields.  (*e.g.*, Ex. A at 27:3-6).  Furthermore, "each field is given a name so that the field is independently accessible," again data records may include fields that are given names.  (*Id.*).  The specification also explains that a data record can contain much more than information about an institution such as phone number and address.  The data record can contain any type of information such as a namekey, a title, a

label, a graphic image, a description, a URL Host name, and a map.  (*e.g.*, Ex. A at 18:60-65, 19:40-42, 46-50, 64-66; 20:7-8, 14-16, 28-29; Fig. 13; Table 7).  The specification also provides examples of data records containing institutional or enterprise information such as phone number and address, in addition to the above fields.  (*e.g.*, Ex. A at 24:29-42; Fig. 17).

For the foregoing reasons, Defendants' proposed construction is inconsistent with the claims and the specification, and the term "data record" does not need to be construed.

### B.    "topics"

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "topics" and/or "topic" and/or "topically" (claims 1, 15, 16, 18, 20, 31, 34, 35, 36, 37) | No need to construe. Plain and ordinary meaning. |

Claims 1, 18, 20, 24, 31, 34, 36, 37, and 37 recite the term "topics" and/or "topic" and/or "topically" (collectively "topic").  As discussed below, "topic" has a well-understood plain and ordinary meaning and does not have any special meaning in the art or as disclosed in the '474 patent.  The term is sufficiently clear and, therefore, does not require construction. Furthermore, neither the court nor the parties in *Geomas* believed that these terms required construction. (*e.g.*, Ex. B at 17-18, 20-21).

Claims 1, 20, and 31 state that entries are organized into a hierarchy of geographical areas and into topics.  Claims 16 and 35 explain that topics may be hierarchically organized. Therefore, the claims explain that the data in the database can be organized geographically and topically.

The specification provides examples of topics that comport with the well-understood plain and ordinary meaning of the term "topic":

"…the topic list presented to the user includes a list of topics such as business services, entertainment, news, consumer goods, historic sites, etc."

(Ex. A at 9:28-30).   Topics may also include jobs or information about jobs, calendar, city government, opinions and editorial, and sports teams.  (*e.g.*, Ex. A at 5:6-8, 60-65; 9:17-19; Fig. 10).  Consequently, the term "topics" should be accorded its plain and ordinary meaning.

Defendants' proposed construction erroneously attempts to narrowly construe "topics" in a manner inconsistent with the claims and the specification.  The claims broadly use the term "topic" and do not limit topics to "goods and services."  The specification likewise broadly uses the term "topic," without limitation to "goods and services" by using such terms as jobs, calendar, city government, historic sites, entertainment, sports teams, opinions and editorials. (*e.g.*, Ex. A at 5:6-8, 60-65; 9:17-19; Fig. 10).   Furthermore, the topics do not have to be "independent."   Dependent claim 35 states that the topics may be hierarchically organized, which means that the topics can contain related information or data ordered from broader categories to narrower specific ones.[5]

Defendants also erroneously contend that "topics" are "distinguished from geographic information and the entries or data records associated with that category."  The claims clearly refute Defendants' position by explaining that entries and data records may be associated with a topic and a geographical area.  Claim 1 states that entries are associated with both geographical areas and topics:  "entries corresponding to each one of said hierarchy of geographical areas is further organized into topics."  (Ex. A at 38:45-47; *also* 39:49-51, 40:47-48).   Claim 18 also states that data records are associated with both topics and geographical areas: "entries comprises a plurality of data records wherein each of said data records is associated with at least one of said topics and at least one of said geographical areas."   (*Id.* at 39:41-43).   Furthermore, the

---

[5] Even under Defendants' proposed constructions using "hierarchically organized," broader topics could encompass narrower topics, and thus would not be "independent."

specification explains that data records may have fields for both geographical and topical information.  (*e.g.*, Ex. A at 18:62-63; 24:29-31; Table 7; Table 9).  Therefore, entries and data records are not limited to either geographical information or topics but may be associated with both.

For the foregoing reasons, Defendants' proposed construction is inconsistent with the claims and the specification and the "topic" terms do not need to be construed.

C.    **"narrower geographical area" and/or geographical area of relatively smaller expanse"; and "broader geographical area" and/or "geographical area of relatively larger expanse"**

| Term or phrase | GeoTag's Proposed Construction |
|---|---|
| "narrower geographical area" and/or "geographical area of relatively smaller expanse" (claims 1, 20) | No need to construe. Plain and ordinary meaning. |
| "broader geographical area"<br><br>"geographical area of relatively larger expanse" (claims 1, 20, 31) | No need to construe. Plain and ordinary meaning. |

Claims 1 and 20 recite the terms "broader geographical area"/"narrower geographical area" and "geographical area of relatively larger expanse"/"geographical area of relatively smaller expanse," respectively.  Claim 31 also recites the term "broader geographical area."  As discussed below, these terms have a well-understood plain and ordinary meaning and do not have any special meaning in the art or as disclosed in the '474 patent.  These terms are sufficiently clear and, therefore, do not require construction.  Moreover, neither the court nor the parties in *Geomas* believed that these terms required construction. (*e.g.*, Ex. B at 23-24).

Claim 1 states that there are entries corresponding to each hierarchy of geographical areas and that at least one of the entries that is associated with "a broader geographical area is

27

dynamically replicated into at least one narrower geographical area." (Ex. A at 38:45-46, 54-56). The broader geographical area is simply a geographical area that is broader than the narrower geographical area. Similarly, claim 31 requires "dynamically replicating an entry from broader geographical area into said geographical search area." (Ex. A at 40:53-54). The broader geographical area is a geographical area that is broader than the geographical search area. Claim 20 states that the "entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse." The geographical area of relatively larger expanse is a geographical area that is of a relatively larger expanse than the geographical areas of smaller expanse. In other words, these terms are sufficiently clear and, therefore, do not require construction.

Defendants' proposed constructions for these terms are inconsistent with the claim language. Defendants attempt to limit the geographical areas to the database and furthermore that the "broader geographical area" and "geographical area of relatively larger expanse" must "encompass" the "narrower geographical area" and "geographical area of relatively smaller expanse." These constructions are inconsistent with the claims and the specification.

The terms "broader geographical area" and "narrower geographical area" are not "geographical areas within the database." Claim 1 is clear that "a broader geographical area" and "one narrower geographical area" are distinct from the "hierarchy of geographical areas" for the entries. If the applicants had intended for "a broader geographical area" and "one narrower geographical area" to be one of the "hierarchy of geographical areas," then the applicants would have stated that it was "a broader one of said hierarchy of geographical areas" and "a narrower one of said hierarchy of geographical areas." Similarly, claim 31 requires "dynamically replicating an entry from broader geographical area into said geographical search area." (Ex. A

28

at 40:53-54).  Again, the claim is written to distinguish the "broader geographical area" from the "plurality of geographical areas."  Defendants' construction also attempts to erroneously limit an entry to being associated "only with a broader [larger] geographical area."  As explained above, an entry can be associated with one or more geographical areas.  (*Supra* p. 26).

Furthermore, "a broader geographical area" and "geographical area of relatively larger expanse" do not "encompass" the "one narrower geographical area" or "geographical area of relatively smaller expanse."  As explained above, the patent does not limit the structure of the database and do not require that broader areas encompass narrower areas within the database.  (*supra* §III.A.1).  Defendants' argument was also rejected in *Geomas*.  (Ex. B at 8-10).

For the foregoing reasons, Defendants' proposed constructions are inconsistent with the claims and the specification, and the terms do not need to be construed.

## CONCLUSION

For the reasons stated above, GeoTag's proposed constructions of the disputed terms should be adopted.

Dated:  November 28, 2012                Respectfully Submitted

By:  */s/ David R. Bennett*
David R. Bennett
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail:  dbennett@directionip.com

Daniel Mount
Kevin Pasquinelli
Mount Spelman & Fingerman, PC
333 West San Carlos Street
Riverpark Tower, Suite 1650
San Jose, CA 95110
Telephone: (408) 279-7000

e-mail: dan@mount.com
      kpasquinelli@mount.com

Craig Tadlock
Texas State Bar No. 00791766
Keith Smiley
Texas State Bar No. 24067869
Tadlock Law Firm
2701 Dallas Parkway, Suite 360
Plano, Texas 75093
Telephone: (903) 730-6789
e-mail: craig@tadlocklawfirm.com
      keith@tadlocklawfirm.com

**ATTORNEYS FOR
PLAINTIFF GEOTAG INC.**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 28, 2012, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).


*David R. Bennett*
David R. Bennett

30