## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **GEOTAG INC., Plaintiff,** | |
| **v.** | |
| **FRONTIER COMMUNICATIONS CORPORATION,** *et al.***, Defendant,** | **2:10-cv-00265** |
| **YELLOWPAGES.COM, LLC,** *et al.***, Defendants,** | **2:10-cv-00272** |
| **GEORGIO ARMANI S.P.A.;** *et al.***, Defendants,** | **2:10-cv-00569** |
| **AROMATIQUE, INC.;** *et al.***, Defendants.** | **2:10-cv-00570** |
| **GUCCI AMERICA, INC.;** *et al.***, Defendants,** | **2:10-cv-00571** |
| **STARBUCKS CORP.;** *et al.***, Defendants.** | **2:10-cv-00572** |
| **RENT-A-CENTER, INC.;** *et al.***, Defendants.** | **2:10-cv-00573** |
| **THE WESTERN UNION COMPANY;** *et al.***, Defendants.** | **2:10-cv-00574** |
| **ROYAL PURPLE, INC.;** *et al.***, Defendants.** | **2:10-cv-00575** |
| **YAKIRA, L.L.C.;** *et al.***, Defendants.** | **2:10-cv-00587** |
| **WHERE 2 GET IT, INC.;** *et al.***, Defendants.** | **2:11-cv-00175** |
| **ZOOSK, INC. Defendant.** | **2:11-cv-00403** |
| **EYE CARE CENTERS OF AMERICA, INC. Defendant.** | **2:11-cv-00404** |
| **AMERCO,** *et al.* **Defendant**s. | **2:11-cv-00421** |
| **7-ELEVEN, INC.,** *et al.***, Defendant**s. | **2:11-cv-00424** |
| **SUNBELT RENTALS, INC. Defendant.** | **2:11-cv-00425** |
| **CLASSIFIED VENTURES, LLC. Defendant.** | **2:11-cv-00426** |
| **CANON INC. and, CANON U.S.A., INC., Defendants,** | **2:12-cv-00043** |
| **AMERICAN APPAREL INC., Defendant,** | **2:12-cv-00436** |
| **ABERCROMBIE & FITCH CO., Defendant,** | **2:12-cv-00437** |
| **AMERICAN EAGLE OUTFITTERS INC., Defendant,** | **2:12-cv-00438** |
| **ANN INC., Defendant,** | **2:12-cv-00439** |
| **BURLEIGH POINT LTD., Defendant,** | **2:12-cv-00441** |

| | |
|---|---|
| **CATALOGUE VENTURES, INC., Defendant,** | **2:12-cv-00442** |
| **BURBERRY LIMITED, Defendant,** | **2:12-cv-00443** |
| **BURLINGTON FACTORY WAREHOUSE CORPORATION, Defendant,** | **2:12-cv-00444** |
| **CACHE INC., Defendant,** | **2:12-cv-00445** |
| **THE WILLIAM CARTER COMPANY, Defendant,** | **2:12-cv-00446** |
| **CHARMING SHOPPES INC., Defendant,** | **2:12-cv-00447** |
| **CHICO'S FAS INC., Defendant,** | **2:12-cv-00448** |
| **CITI TRENDS INC., Defendant,** | **2:12-cv-00449** |
| **CLAIRE'S BOUTIQUES, INC., Defendant,** | **2:12-cv-00450** |
| **COLDWATER CREEK INC., Defendant,** | **2:12-cv-00451** |
| **DAVID'S BRIDAL INC., Defendant,** | **2:12-cv-00452** |
| **DEB SHOPS INC., Defendant,** | **2:12-cv-00453** |
| **DELIAS INC., Defendant,** | **2:12-cv-00454** |
| **DIESEL U.S.A. INC., Defendant,** | **2:12-cv-00456** |
| **DONNA KARAN INTERNATIONAL INC., Defendant,** | **2:12-cv-00457** |
| **LVMH MOET HENNESSY LOUIS VUITTON INC., Defendant,** | **2:12-cv-00458** |
| **DOTS, LLC, Defendant,** | **2:12-cv-00459** |
| **DRAPER'S & DAMON'S INC., Defendant,** | **2:12-cv-00460** |
| **EDDIE BAUER LLC, Defendant,** | **2:12-cv-00461** |
| **ESPRIT US RETAIL LIMITED, Defendant,** | **2:12-cv-00462** |
| **FACTORY CONNECTION LLC, Defendant,** | **2:12-cv-00463** |
| **THE FINISH LINE INC., Defendant,** | **2:12-cv-00464** |
| **FOREVER 21 RETAIL INC., Defendant,** | **2:12-cv-00465** |
| **FORMAL SPECIALISTS LTD., Defendant,** | **2:12-cv-00466** |
| **FREDERICK'S OF HOLLYWOOD STORES INC., Defendant,** | **2:12-cv-00467** |
| **GROUPE DYNAMITE, INC. D/B/A GARAGE, Defendant,** | **2:12-cv-00468** |
| **GUESS? RETAIL INC., Defendant,** | **2:12-cv-00469** |

| | |
|---|---|
| H&M HENNES & MAURITZ LP, Defendant, | 2:12-cv-00470 |
| HANESBRANDS INC., Defendant, | 2:12-cv-00471 |
| HOT TOPIC INC., Defendant, | 2:12-cv-00472 |
| HUGO BOSS FASHION INC., Defendant, | 2:12-cv-00473 |
| J. CREW GROUP INC., Defendant, | 2:12-cv-00474 |
| JIMMY JAZZ INC., Defendant, | 2:12-cv-00475 |
| JOS. A. BANK CLOTHIERS INC., Defendant, | 2:12-cv-00476 |
| ALCO STORES INC. Defendant, | 2:12-cv-00477 |
| FRED'S INC., Defendant, | 2:12-cv-00478 |
| BAKERS FOOTWEAR GROUP, Defendant, | 2:12-cv-00479 |
| BROWN SHOE COMPANY INC., Defendant, | 2:12-cv-00480 |
| COLLECTIVE BRANDS INC., Defendant, | 2:12-cv-00481 |
| CROCS INC., Defendant, | 2:12-cv-00482 |
| DSW INC. D/B/A DSW SHOE INC., Defendant, | 2:12-cv-00483 |
| FLEET FEET INC., Defendant, | 2:12-cv-00484 |
| GENESCO INC., Defendant, | 2:12-cv-00486 |
| HEELY'S INC, Defendant, | 2:12-cv-00487 |
| JUSTIN BOOT COMPANY, Defendant, | 2:12-cv-00488 |
| AMERICAN GREETINGS CORPORATION, Defendant, | 2:12-cv-00520 |
| HALLMARK CARDS, INC., Defendant, | 2:12-cv-00521 |
| HICKORY FARMS INC., Defendant, | 2:12-cv-00522 |
| SPENCER GIFTS LLC, Defendant, | 2:12-cv-00523 |
| INTERNATIONAL COFFEE & TEA, LLC, Defendant, | 2:12-cv-00524 |
| THINGS REMEMBERED, INC., Defendant, | 2:12-cv-00525 |
| THE YANKEE CANDLE COMPANY, Defendant, | 2:12-cv-00526 |
| BOSE CORPORATION, Defendant, | 2:12-cv-00527 |
| GUITAR CENTER INC., Defendant, | 2:12-cv-00528 |
| PROGRESSIVE CONCEPTS INC., Defendant, | 2:12-cv-00529 |

| | |
|---|---|
| 24 HOUR FITNESS WORLDWIDE INC., Defendant, | 2:12-cv-00530 |
| BALLY TOTAL FITNESS CORPORATION, Defendant, | 2:12-cv-00531 |
| BARE ESCENTUALS INC., Defendant, | 2:12-cv-00532 |
| BIOSCRIP INC., Defendant, | 2:12-cv-00533 |
| CRABTREE & EVELYN, Defendant, | 2:12-cv-00534 |
| CURVES INTERNATIONAL INC., Defendant, | 2:12-cv-00535 |
| GOLD'S GYM INTERNATIONAL INC., Defendant, | 2:12-cv-00536 |
| GREAT CLIPS INC., Defendant, | 2:12-cv-00537 |
| L.A. FITNESS INTERNATIONAL LLC, Defendant, | 2:12-cv-00538 |
| LIFE TIME FITNESS INC., Defendant, | 2:12-cv-00539 |
| M.A.C. COSMETICS INC., Defendant, | 2:12-cv-00540 |
| MERLE NORMAN COSMETICS, Defendant, | 2:12-cv-00541 |
| VITAMIN COTTAGE NATURAL FOOD MARKETS, INC., Defendant, | 2:12-cv-00542 |
| REGIS CORPORATION, Defendant, | 2:12-cv-00543 |
| SALLY BEAUTY SUPPLY LLC, Defendant, | 2:12-cv-00544 |
| SEPHORA USA INC., Defendant, | 2:12-cv-00545 |
| TONI&GUY USA, LLC, Defendant, | 2:12-cv-00546 |
| ULTA SALON, COSMETICS & FRAGRANCE INC., Defendant, | 2:12-cv-00547 |
| VITAMIN SHOPPE INDUSTRIES, INC., Defendant, | 2:12-cv-00548 |
| EYEMART EXPRESS, LTD., Defendant, | 2:12-cv-00549 |
| LUXOTTICA RETAIL MORTH AMERICA INC., Defendant, | 2:12-cv-00550 |
| NATIONAL VISION INC., Defendant, | 2:12-cv-00551 |
| U.S. VISION INC., Defendant, | 2:12-cv-00552 |
| JOS. A. BANK CLOTHIERS INC., Defendant, | 2:12-cv-00554 |
| BUTH-NA-BODHAIGE INC., Defendant, | 2:12-cv-00555 |
| PSP GROUP, LLC, Defendant, | 2:12-cv-00556 |

| | |
|---|---|
| **WHERE 2 GET IT, INC.;** *et al.*, **Plaintiff,** <br><br> **v.** <br><br> **GEOTAG INC., Defendant.** | **2:12-cv-00149** |

## GEOTAG INC.'S REPLY CLAIM CONSTRUCTION BRIEF

David R. Bennett (Lead Counsel)
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail:  dbennett@directionip.com

Daniel Mount
Kevin Pasquinelli
Mount Spelman & Fingerman, PC
333 West San Carlos Street
Riverpark Tower, Suite 1650
San Jose, CA 95110
Telephone: (408) 279-7000
e-mail: dan@mount.com
          kpasquinelli@mount.com

Craig Tadlock
Texas State Bar No. 00791766
Keith Smiley
Texas State Bar No. 24067869
Tadlock Law Firm
2701 Dallas Parkway, Suite 360
Plano, Texas 75093
Telephone: (903) 730-6789
e-mail: craig@tadlocklawfirm.com
          keith@tadlocklawfirm.com

*Attorneys for GeoTag, Inc.*

Dated:  December 18, 2012

# TABLE OF CONTENTS

**Page**

**Contents**

ARGUMENT ..................................................................................................................... 1

I.     RESPONSE TO DEFENDANTS' BACKGROUND STATEMENT .................................. 1

II.    DEFENDANTS' PROPOSED CONSTRUCTIONS ARE IMPROPER ........................... 3

    A.    "hierarchy" terms do not require "encompassing" or "ordered" entries ........................3

    B.    "database" ...........................................................................................................................4

    C.    "entry"/"entries" ................................................................................................................5

    D.    "dynamically replicated" and/or "dynamically replicating" ...........................................6

    E.    "geographical search area" ................................................................................................7

    F.    "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area" and similar term ................................................8

    G.    "on-line information" .........................................................................................................9

    H.    "organizing a database of on-line information into a plurality of geographical areas" ...............................................................................................................................9

    I.    "organizer" ......................................................................................................................10

    J.    "data record" does not require construction .................................................................11

    K.    "topic" does not require construction .............................................................................11

         1.    "topics" are not limited to "goods and services" ...................................................12

         2.    "topics" can be information in an entry or data record ........................................12

         3.    "topics" can be particular and do not need to be independent ............................13

         4.    The claims do not require the database to be first organized geographically and then organized topically ......................................................14

    L.    "narrower geographical area" and/or "geographical area of relatively smaller expanse"; and "broader geographical area" and/or "geographical area of relatively larger expanse" do not require construction ...................................................15

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v.Sandoz, Inc.*,
  566 F.3d 1282 (Fed.Cir. 2009)..................................................................................... 5

*Altiris, Inc. v. Symantic Corp.*,
  318 F.3d 1363 (Fed.Cir. 2003)................................................................................... 10

*Geomas (Int'l) Ltd., et al. v. Idearc Media Services-West, Inc.*,
  Civil Action No. 2:06-cv-00475 (E.D. Tex.) ................................................... passim

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed.Cir. 2004)..................................................................... 4, 6, 10, 14

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed.Cir. 2005) (*en banc*) ................................................. 3, 6, 8, 15

*SunRace Roots Enter. Co. v. SRAM Corp.*,
  336 F.3d 1298 (Fed.Cir. 2003)........................................................................... 1, 6

*Thorner v. Sony Computer Entertainment America LLC*,
  669 F.3d 1362 (Fed.Cir. 2012).......................................................................... passim

Pursuant to the Court's First Amended Scheduling and Discovery Order and P.R. 4-5, plaintiff, GeoTag, Inc. ("GeoTag"), serves this reply brief to Lead Defendant's and defendants' responsive claim construction brief[1] in the above captioned cases (collectively "Defendants").

Defendants violate the basic tenets of claim construction law by proposing constructions that incorrectly redefine or narrow the plain and ordinary meaning of every disputed claim term. Where, as here, the patentee chose broad terms, the patentee should expect to obtain the full scope of the term's plain and ordinary meaning. *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1367 (Fed.Cir. 2012).   Defendants seek to limit every claim term by citing to preferred embodiments; however, even if the patent only discloses one embodiment, or all embodiments contain a particular limitation, this is insufficient to redefine a term or disavow claim scope. *Id.* at 1365, 1366-67; *SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1305 (Fed.Cir. 2003) (the "heavy presumption" in favor of the claim term's ordinary meaning cannot be overcome "by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history.").   Broad terms are only narrowed if the patentee "explicitly redefines the term" or "disavows [the] full scope" of the claims through "a clear and unmistakable disclaimer." *Thorner*, 669 F.3d at 1366-67.   There are no explicit redefinitions or clear and unmistakable disclaimers and, therefore, the disputed terms should be construed consistent with GeoTag's proposed constructions.

## ARGUMENT

## I.   RESPONSE TO DEFENDANTS' BACKGROUND STATEMENT

Defendants' contention that the '474 patent discloses only "one preferred embodiment" is

---

[1] In addition to exceeding the page limit by 15 pages, Defendants' brief violated L.R. 10(a)(5) by using less than 12 point font in an excessive 158 footnotes.

clearly refuted by the specification, which discloses numerous embodiments.  (*e.g.*, Ex. A[2] at 3:15 ("According to one preferred embodiment,…"), 18 ("According to another preferred embodiment,…"), 25 ("According to yet a further preferred embodiment,…"; *also* 3:31, 46; 4:13; 8:7, 50, 59-60).  Regardless, claims are not limited to preferred embodiments without explicit redefinitions or clear and unmistakable disclaimers, which are not present in the intrinsic evidence.  *Thorner*, 669 F.3d at 1366-67.  Therefore, Defendants' analysis of the "disclosed embodiment" is irrelevant to claim construction because it discusses embodiments narrower than the broad claim terms.

For example, Defendants contend that a preferred embodiment discloses that "the database is organized into a hierarchy of geographical areas." (Def. at 2).  However, Defendants agree that in the claims it is the "information," not the database, that is "organized into a hierarchy of geographical areas." (Def. at 33; *e.g.*, Ex. A at 38:44).  Defendants also agree that the "database" in the claims is not a hierarchical database.  (Def. at 33; *also* Ex. B at 12).

Defendants assert that the examiner "equated" "dynamic replication" to "a parent-child relationship" and "inheriting attributes."  (Def. at 3-4, 26).  The examiner did so, however, ***not*** for the purpose of defining the scope of the claims, but for the purpose of searching the prior art.  (*See* Def. Ex. G).  The claims should not be restricted merely because they are broad enough to include parent-child relationships as well as inheriting attributes.  (Ex. B at 8-10).

GeoTag agrees with Defendants that the constructions in *Geomas* are not binding but that the Court should be "respectful" of those claim constructions.  (*See* Def. at 5).  Defendants, however, accord no respect to those constructions.  Defendants make the same arguments that were rejected in *Geomas* without asserting any errors with the *Geomas* opinion, or raising any

---

[2] GeoTag's opening brief is cited as "G.B." and the attached exhibits are cited as "Ex. __." Defendants' Brief is cited as "Def." and its attached exhibits as "Def. Ex. __" .

new evidentiary arguments.  Defendants go so far as to argue that the *Geomas* constructions are

"untenable," "vague and passive," "overly broad and vague," and "eviscerat[e] the key claim

limitation."  (*e.g.*, Def. at 14, 17, 18, 19).  In contrast, GeoTag has proposed the *Geomas*

constructions because they are the correct constructions supported by the intrinsic evidence.

## II.     DEFENDANTS' PROPOSED CONSTRUCTIONS ARE IMPROPER

Defendants' constructions attempt to read numerous incorrect limitations into the claims

to improperly narrow the claims.  For example, Defendants insert "within the database" eleven

times into eight constructions (including six times into claim 1) and insert "encompassed" into

seven constructions (including six times into claim 1).  As shown below, this shotgun approach

of inserting limitations into the claims is not supported by the intrinsic evidence or the law.

### A.      "hierarchy" terms do not require "encompassing" or "ordered" entries[3]

Defendants agree with the *Geomas* opinion and GeoTag that the database is not limited to

a hierarchical database and that it is the "information," not the database, that is "organized into a

hierarchy of geographical areas."  (Def. at 29, 33; Ex. B at 8-10, 12).  Yet, Defendants contend

that the geographical areas are "ordered" such that the broader/larger geographical areas must

"encompass[]" the narrower/smaller geographical areas. This argument was explicitly rejected in

*Geomas* as improperly limiting the invention to a tree-like/parent-child structure.  (Ex. B at 9,

12).  Claim differentiation also refutes Defendants' "encompassing" language.[4]  *Phillips v. AWH*

*Corp.*, 415 F.3d 1303, 1314-15 (Fed.Cir. 2005) (*en banc*); (Ex. B. at 9).  Dependent claim 5

limits the hierarchy of geographical areas in claim 1 such that higher levels "encompass[]" lower

levels, the exact limitation that Defendants are trying to read into claim 1.  (Ex. A at 39:3-5);

---

[3] Defendants needlessly responded to GeoTag's claim construction brief out of order.  GeoTag is
replying in the same order as its opening brief.  "Hierarchy" terms are addressed at Def. at 32-35.
[4] Without any supporting case law, Defendants reject the identical claim differentiation argument
that the *Geomas* court held was correct.  (*Compare* Ex. B at 17-18 *with* Def. at 18-19).

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed.Cir. 2004) ("where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest."). Likewise, the specification supports finding that there is a relationship between the geographical areas, but that the relationship is not limited to "encompassing." (Ex. A at 8:22-36; Ex. B at 10).

Defendants' reliance on the specification stating that "a 'parent' entry" "encompasses one or more children entries" actually cautions against requiring "encompassing." If the patentees had wanted the "hierarchy" terms to be limited to "encompassing," the patentees would have used "parent," "child," or "encompassing" to define the relationship, as the patentees did in dependent claim 5 by using "encompassing." *Thorner*, 669 F.3d at 1368.

### B.     "database"

The parties agree that "database" does not have any structural limitation. (*e.g.*, Def. at 33). Rather than construing "database" to have its ordinary and customary meaning to one of skill in the art, Defendants are erroneously contending that the '474 patent has defined "database" to have a very specific meaning. Defendants not only add in structural limitations ("a data structure of ordered entries"), but they also require where the database must be ("separate from the user's browser"), what can access the database ("accessed by the search engine"), and what the database must be used for ("to search geographically and topically"). All of Defendants' arguments are directed toward improperly importing limitations from preferred embodiments into the claims and redefining the term. The parties agree that the database has no required structure. Moreover, the claims require that the entries are "organized," not "ordered."[5] The claims also do not require a "user" or a "browser" or a user using a browser, as incorrectly

---

[5] The court in *Geomas* rejected limiting "database" to "interrelated data records," which is very similar to Defendants' construction that requires "ordered entries." (*See Geomas* at 11).

required by Defendants' construction.  (*See* Ex. B at 25).  Finally, the claims only require a "search engine in communication with said database," not that the database "is accessed by the search engine."  The patent does not redefine "database" to have any special meaning and therefore the Court should reject Defendant's limiting construction.

### C.        "entry"/"entries"

Defendants attack GeoTag's proposed construction, and hence the construction of Magistrate Judge Everingham, for ignoring the specification, being "overly broad and vague," "eviscerating the key claim limitation," and "impermissibly attempt[ing] to reclaim scope that the patentees disclaimed during patent prosecution."  (Def. at 17, 18, 19).  As explained in GeoTag's opening brief, GeoTag's proposed construction of "entry" is well supported by the claims and the specification. (G.B. at 10-11).  In addition, Magistrate Judge Everingham reviewed the claims and specification, and held that "entry" is used broadly in the patent.  (*See* Ex. B at 17 ("Additionally, throughout the specification, the '474 patent uses the disputed terms 'entry' and 'entries' broadly.  *See*, *e.g.*, '474 Patent, col. 12 ll.3-5, col. 22 l. 39-col. 23 l. 3, col. 18 ll. 62-63, col. 24 ll. 30-31." (footnote omitted)).

The *Geomas* opinion also rejected that there was any prosecution disclaimer limiting the scope of "entry."  (Ex. B at 16).  Reviewing the exact same portion of the prosecution history in which "the patentee replaced 'information' with 'entries' in each independent claim," the court found that the terms "data" and "information" were not used interchangeably and therefore there was no prosecution history disclaimer.  (*Compare* Ex. B at 16 *with* Def. at 19); *also Abbott Labs. v.Sandoz, Inc.*, 566 F.3d 1282, 1289 (Fed.Cir. 2009) ("owing in part to the inherent ambiguities of prosecution history, the doctrine of prosecution disclaimer only applies to unambiguous disavowals.").  In sum, Defendants' attacks on GeoTag's proposed construction are refuted in GeoTag's opening brief and were previously rejected in *Geomas*.

Defendants' proposed construction improperly seeks to limit the claims to preferred embodiments. *Thorner*, 669 F.3d at 1365; *SunRace*, 336 F.3d at 1305. The '474 patent uses the term "entry" broadly. Defendants' further contention that "record" and "entry" are synonyms is unsupported by the claims and specification. Moreover, Defendants' proposed constructions would be nonsense if the words "record" is replaced with "entry." Defendants' also provide no argument to support their construction that an "entry" is "a listing." In fact, the specification contradicts Defendants construction because there can be "nonlist entries." (Ex. A at 20:7-8).

Defendants' argument that an "entry" "includes multiple data records" is inconsistent with the claims and was explicitly rejected in *Geomas*. Each of the four independent claims (1, 20, 26 and 31) have dependent claims (18, 24, 27 and 36, respectively) that add a limitation that "entries" comprise "data records." (*See* Ex. A at 39:34-35; 40: 5-6, 28-29, 66-67). Therefore, the claim differentiation precludes finding that an "entry" must "include[] multiple data records." *See Phillips*, 415 F.3d at 1314-15; *Liebel-Flarsheim*, 358 F.3d at 910. The specification likewise refutes that "entry" must be multiple data records because an entry can be a single data in the database. (*e.g.*, Ex. A. at 12:4-5 ("the displayed entry will simply be the city name designated as the NameKey parameter."); 15:23-25 ("Any entry whose parent folder name matches the name specified will be returned by the search."); 22:41 ("…the entry 'Points of Interest for Los Angeles'….")". Entries can also include subentries. (*e.g.*, *id.* at 23:61-63; 25:1-2). Therefore, Defendants' proposed construction that requires the "entry" to be a "listing" that "includes multiple data records" is unsupported by the specification.

### D.     "dynamically replicated" and/or "dynamically replicating"

Defendants erred by modifying the construction of the "dynamically replicated" terms in the *Geomas* opinion for several reasons. First, Defendants' construction improperly excludes "inheriting," which is the word used in the patent and the prosecution history to explain

"dynamic replication."  (Ex. A at 19:29-39, 19:46-63; Ex. G at 3; *also* Ex. B at 22-23).

Second, Defendants erroneously contend that the replication must be "within the database" and "at the time of the search."  The claim does not support this construction.  In all independent claims, the "dynamically replicating" term is in the section referring to the search engine, not the database, and independent claims 1, 20, and 31 do not limit where the dynamic replication is occurring.  (Ex. A at 38:55; 39:58; 40:24, 53).  Moreover, the claims do not have "a search" limitation.

Finally, contrary to Defendants' assertion, the *Geomas* opinion did ***not*** reject (or even address) the argument of dynamic replication occurring in the displaying of search results.  (*See* Def. at 23-24).  Instead, the court found that Fig. 15 displayed geographical search areas, not search results, and, therefore, Fig. 15 was not relevant to dynamic replication.  Figure 15 displays a list of geographic entries 1540 (*e.g.*, "Southern California," "California," "United States") derived from "label field 1315," which is a "folder title (i.e., listed ***area*** under the selected geographic area)."  (Fig. 15; 19:48-49; 22:32-34).[6]  Because the entries displayed (1540) were geographical areas, and not search results, the court found that "[t]here is no replication or copying of any information from a broader area into a narrower area at the time it is needed to respond to a search inquiry."  (Ex. B at 23).  Therefore, *Geomas* fails to support Defendants' proposed construction.

### E.      "geographical search area"

Defendants' construction again tries to incorrectly read in that everything must occur "within the database," which, as explained above, is inconsistent with the claim language and the specification.  Moreover, claim 1 states that the ***search engine*** "***provide[s]*** a geographical search area," which means it is not required to be "within the database."  (Ex. A at 38:51-52).

---

[6] Emphasis is added unless otherwise noted.

Furthermore, Defendants' contention that the "search engine" must select the "geographical search area" is inconsistent with the claims.  For example claim 31 has the step of "directing a search engine… to select a geographical search area" such that something other than the search engine directs the selection.  This is consistent with claims 1 and 20 where the "search engine [is] further **configured** to select," not that the "search engine selects."  (Ex. A at 38:49-50; 39:53-55). The specification also explains that the user can select the geographical search area, thus not requiring a selection solely by the search engine.  (Ex. A at 7:11-18).

### F.   "wherein within said hierarchy of geographic areas at least one of said entries associated with a broader geographical area is dynamically replicated into at least one narrower geographical area" and similar term

Defendants again attempt to add into their constructions that the broader/larger geographical areas "encompass" narrower/smaller geographical areas.  As explained above, Defendants agree with the *Geomas* opinion and GeoTag that the database is not limited to a hierarchical database.  As also explained above, claim differentiation refutes that the broader/larger areas encompass the narrower/smaller areas.  *Phillips*, 415 F.3d at 1314-15.

Defendants' proposed constructions again erroneously require that everything must be "within the database."  The claim term is in the section referring to the search engine, not the database, and, therefore, should not be limited to "within the database."[7]  Furthermore, the database is not organized into a hierarchy of geographical areas; the claims state that the "information" is "organized into a hierarchy of geographical area."  (*e.g.*, Ex. A at 38:44-45; *Geomas* at 12).  The claims, therefore, do not require "geographical areas" "within the database."

Defendants' construction continues to improperly read in limitations by requiring that an

---

[7] Defendants' assertion that GeoTag's construction supports their construction is baseless.  (*e.g.*, Def. at 28).  GeoTag's construction only states that there are "a broader geographical area" and a "subset of that broader geographical area" but there is no limitation of "within the database." Once again, Defendants' read in the non-existent "within the database" limitation.

entry is "associated *only* with" a broader/larger geographical area.  (Def. at 28).   Defendants have no support from the claims or specification to support this argument.  Defendants' reliance on extrinsic evidence, namely GeoTag's Technology Tutorial, still does not support Defendants' limitations because the tutorial only provides an example of why a business *may* want to be associated with a broader geographical area, not that it can only be associated with a broader geographical area.  (*e.g.*, Def. at 29; Def. Ex. K at slides 83-84).

      **G.**      **"on-line information"**

      Neither the intrinsic evidence nor the extrinsic evidence support Defendants' construction that "on-line information" must be "remotely accessible."  The '474 patent uses the term "remotely" distinctly from "on-line information."  The patent uses the term "remotely accessible information" in only one aspect of the invention, whereas several other aspects of the invention use only the term "on-line information."  (*Compare* Ex. A at 3:31-33 *with* 2:64, 3:66, 4:13-15, 28-29).   Furthermore, if "remotely accessible" means "on-line," then it would have been unnecessary in the '474 patent to state "***remotely accessible*** information in an ***on-line*** network." (Ex. A at 3:32-33). *Thorner*, 669 F.3d at 1368.  Therefore, it is improper to construe "on-line information" to require that information is "remotely accessible."

      Defendants' contention that the dictionary GeoTag cited supports Defendants' construction and refutes GeoTag's construction is misplaced.  GeoTag's construction of "accessed by a computer" would necessarily include a "computer network," which requires computers consistent with the dictionary.  However, Defendants' definition requiring "accessible over a network" would exclude being accessed by a computer without a network.

      **H.**      **"organizing a database of on-line information into a plurality of geographical areas"**

      Defendants' construction has several major flaws.  First, Defendants read in the limitation

"At the time the database is being organized" which is not found in the claim or the specification. There is no alleged "temporal ambiguity" in the claim and it is improper to impose a specific order of steps absent an indication to do so. *Liebel-Flarsheim*, 358 F.3d at 906 (*citing Altiris, Inc. v. Symantic Corp.*, 318 F.3d 1363, 1372 (Fed.Cir. 2003); (*also* Ex. B at 21). Moreover, as explained above, the claim and specification are clear that it is the "information" that is organized, not the database. (*e.g.*, Ex. A at 38:44-45; *also* 1:7-8; 2:44-47; 3:37-38, 46-47, 66-67; 4:16, 30-31). Second, without any support (because there is no support in the intrinsic evidence), Defendants construction erroneously substitutes "ordering" for "organization." And, third, once again Defendants erroneously attempt to limit the geographic areas to areas "within the database," which is not supported by the intrinsic evidence.

## I.       "organizer"

As GeoTag pointed out in its opening brief, and Defendants never address, Defendants contention that the "organizer" is a "network interface" is rebutted by Fig. 1 that is a preferred embodiment which uses a port server or routing hub, not a network browser interface. Furthermore, claim 1 requires that the "organizer" is "executing in said computer network," which does not require a network interface. (Ex. A at 38:40; Ex. B at 25). Defendants also erroneously require that the organizer "organizes on-line information." This improperly limits the claim, which only requires that information is "organized" without limiting what organizes the information. (Ex. A at 38:43-46).

The prosecution history also does not support Defendants' position. The examiner argued that the Yahoo directory met the organizer limitation; however, the examiner ***did not*** state that an organizer was limited to a directory. (Def. Ex. D at 3). Similarly, although the specification describes that an organizer may include a network interface, an organizer is not limited to a network interface. (Ex. A at 1:6-10; 38:40; Fig. 1)

10

**J.      "data record" does not require construction**

As explained in GeoTag's opening brief, the term "data record" does not require construction because it has a well-understood plain and ordinary meaning and does not have any special meaning in the art or as disclosed in the '474 patent.  Defendants' proposed construction is not supported by the intrinsic evidence and is inconsistent with the ordinary meaning of the term.  Defendants have no citation to the record to support that "data records" are "fields within an entry."  (Def. at 21).  Moreover, Defendants' construction is internally inconsistent and in no way clarifies the meaning of "data record."   For example, if "entry" means "record" as Defendants contend (which it does not), then substituting "record" for "entry" in Defendants' proposed construction would result in "data record" meaning "one or more fields within a [record]."   Furthermore, inserting Defendants' construction for "data records" into their construction for "entries" would result in the confusing and circular definition that "entry" means "A listing contained in the database that includes multiple [one or more fields within an entry (*e.g.*, phone number, address)]."   Finally, Defendants' contention that "(*e.g.*, phone number, address)" are "exemplary types of fields" is deceptive. Phone number and address are not exemplary of the type of data that the data records can also contain such as name, expiration date of a record graphics, maps, URLs, codes, text, labels, and bullets.  (*e.g.*, Ex. A at 18:60-65, 19:40-42, 46-50, 64-66; 20:7-8, 14-16, 28-29; 24:29-42; Fig. 13; Fig. 17; Table 7).

**K.      "topic" does not require construction**

The term "topic" does not require construction because it has a well-understood plain and ordinary meaning and does not have any special meaning in the art or as disclosed in the '474 patent.  The patent explains that the search engine is configured to search geographically and topically.  The parties agree that "geographically" does not require construction because it is readily understood and, similarly, "topic" does not require construction.  With the prevalence of

11

search engines such as Google, Yahoo!, and Bing, in which users readily understand the "topic" of their search, there is no need to define "topic."

### 1.      "topics" are not limited to "goods and services"

Defendants' construction erroneously narrows the term "topic."  The specification does not support limiting "topic" to "goods and services."  "Topic" is broader than goods and services because the specification states "individual goods, services, ***or other topics***."  (Ex. A at 15:57-58).  If "topic" was limited to "goods and services," there would be no reason for the specification to explicitly include "other topics" in addition to "goods, services."  *Thorner*, 669 F.3d at 1368.  Furthermore, as explained in GeoTag's opening brief, topics can include jobs, calendars, historic sites, opinions and editorials, which are not goods and services.  (G.B. at 26).  Defendants' contention that phone numbers are geographic and not a topic is also wrong.  Phone numbers can be transferred from one location to another (*e.g.*, when a business moves), phone numbers can be forwarded to another location, and cell phone numbers travel with the users. Therefore, phone numbers are not geographical and can be topics.

### 2.      "topics" can be information in an entry or data record

Defendants' erroneously contend that "topics" cannot be information contained in an entry or data record.  There is no limitation of the scope of "topic" in the independent claims. Moreover, the specification refutes Defendants' contention with an example of the data explicitly including a searchable "topic," namely "folder name": the "data… includes a parent folder name field" by which the user searches and the "database returns a list of all the names whose parent folder name matches the requested name."  (Ex. A at 23:30-39).  Defendants' own example also refutes their own contention by demonstrating that both the topic and entry can include the term "hospital" or "health services" and both the geographic area and entry can include the term "Los Angeles."  (Def. at 9).  Therefore, a topic can be data or an entry.

Regardless, this entire argument is irrelevant because, contrary to Defendants' assertion (Def at 7-8), the claims do **not** require separate "topical information" and "geographical information," which are different from "final destination information."  Instead, the independent claims merely require "information organized" into geographical areas and the "entries" are "organized" into "topics"; how that organization is accomplished is not a limitation and whether the topics can be an entry or data record is also not a limitation.  (*e.g.*, Ex. A at 38:45-47; 39:49-51; 40:48-49).  Dependent claim 18 is the only claim that places a further limitation as to what an "entry" comprises, and it "compris[es] a plurality of data records," again with no limitation as to containing specific types of information.  (Ex. A at 39:38-40).  Claim 18 also refutes that information must be either topical or geographical because claim 18 allows a single data record to be associated with both a topic and a geographical area.  (*Id.*).

### 3.  "topics" can be particular and do not need to be independent

Defendants' contention that a topic must relate to a category and cannot be "any one entry within a topic" is not supported by the specification.  The specification explains that topics may have subtopics that may further have subtopics, etc., until the "user has selected a topic for which there is no further subtopic (i.e., if the user has descended to a final destination defined by the most particular topic level for that topic branch)." (Ex. A at 9:34-44; Fig. 2B).  In other words, there may be so many topics such that each topic may contain only one entry.  (*Id.*).  Therefore, Defendants' contention that "topic" must be a "category" that must "retain a categorical level of generality" and cannot be something "particular" is not supported by the claim language or specification.  (*See* Def. at 10).

Defendants' contention that the topic must be "independent" to distinguish "independent topics from dependent subtopics" also has no support in the claims or specification.  Dependent claims require that "topics are hierarchically organized," in other words, each level of the

13

hierarchy is still called a "topic."   (Ex. A at 39:28-29; 40:64-65).   The specification likewise

refers to the smallest subtopic, "most particular topic level," as a "topic."   (Ex. A at 9:41-44).

Therefore, a topic is not required to be independent and can depend from other topics.

### 4. The claims do not require the database to be first organized geographically and then organized topically

Defendant's argument that the claims require that the database is first organized

geographically and then organized topically misreads the claims.   This argument was rejected by

Magistrate Judge Everingham as unsupported by the claim language.   (Ex. B at 18).   Claim 1,

dependent claims, and the specification repeatedly use the term "further" in a manner that does

not denote order and is more akin to additional or also.   (*e.g.*, Ex. A at 38:50-51; 3:6-8 ("The

organizer *further* comprises a search engine in communication with the database."); 3:25

"According to yet a *further* preferred embodiment…"; 3:35-36; 4:24; 9:55-56; 40:31-32 ("said

database of information *further* contains a plurality of display formats"); 40:35-36 ("The system

of claim 28 *further* comprising a display page…")).   Magistrate Judge Everingham also

considered and rejected this specific argument because "it is the 'entries' and not the 'topics' that

correspond to the hierarchy of geographic areas" and "claims 20 and 31 instruct that the topics

may be associated with more than one geographical area."   (Ex. B at 18).   The court likewise

concluded later in the opinion that "[t]here is no indication in the patent that the geographic area

necessarily must be selected before the topic."   (Ex. B at 21). Furthermore, if the patentee had

intended to require the geographical organization prior to organizing topically, the patentee knew

how to denote order, for example, by using the term "prior to" as is stated later in claim 1.

Instead, there is no order for organizing geographically and topically in this system claim.   (*See*

Ex. B at 21); *Liebel-Flarsheim*, 358 F.3d at 906.

Despite the issue of order being previously addressed by the court, Defendants' attack

GeoTag's proposed construction, which is Magistrate Judge Everingham's construction, as "untenable," "vague and passive," and one that "ignores the explicit limitations of the claim language." (Def. at 14). As explained in GeoTag's opening brief and in *Geomas*, GeoTag's proposed construction is well supported by the claim language and specification, which do not require any order to organizing geographically and topically. (Ex. B at 15).

**L.** **"narrower geographical area" and/or "geographical area of relatively smaller expanse"; and "broader geographical area" and/or "geographical area of relatively larger expanse" do not require construction**

As explained in GeoTag's opening brief, these terms are sufficiently clear and do not require construction. Defendants' constructions are once again predicated on adding the erroneous "encompassing" language. As explained above, claim differentiation refutes this argument because dependent claims add the "encompassing" language and "[t]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314-15; (Ex. B at 9). Defendants do not rebut this presumption.

## CONCLUSION

For the reasons stated above and in GeoTag's opening claim construction brief, GeoTag's proposed constructions of the disputed terms should be adopted.


Dated:  December 18, 2012                    Respectfully submitted,


                                             */s/ David R. Bennett*
                                             By:   David R. Bennett
                                                   Direction IP Law
                                                   P.O. Box 14184
                                                   Chicago, IL 60614-0184
                                                   Telephone: (312) 291-1667
                                                   e-mail:  dbennett@directionip.com

Daniel Mount
Kevin Pasquinelli
Mount Spelman & Fingerman, PC
333 West San Carlos Street
Riverpark Tower, Suite 1650
San Jose, CA 95110
Telephone: (408) 279-7000
e-mail: dan@mount.com
        kpasquinelli@mount.com

Craig Tadlock
Texas State Bar No. 00791766
Keith Smiley
Texas State Bar No. 24067869
Tadlock Law Firm
2701 Dallas Parkway, Suite 360
Plano, Texas 75093
Telephone: (903) 730-6789
e-mail: craig@tadlocklawfirm.com
        keith@tadlocklawfirm.com

**ATTORNEYS FOR PLAINTIFF
GEOTAG INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 18, 2012, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*David R. Bennett*
David R. Bennett